IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| NATANEL MALKOUKIAN | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 24-CV-1109 |
| NEST SEEKERS INTERNATIONAL, EDDIE SHAPIRO, MICHAEL BETHONEY, NAYI SHEN, and MARIANO BULFAMANTE | ) ) ) ) ) | COMPLAINT |
| Defendants. | ) ) | |

Plaintiff, by his attorneys, Heller Horowitz & Feit, for his complaint against defendants, alleges:

**Jurisdiction and Venue**

1.      This is an action for: (1) unlawful retaliation and discrimination in violation of: (a) 42 U.S.C. section 2000e-3(a); (b) New York Executive Law Section 296 (1)(e); and (c) New York City Human Rights Law ("NYCHRL") [NYC Adm. Code section 8-107(7)]; (2) breach of contract; (3) quantum meruit; and (4) unjust enrichment.

2.      This Court has original subject matter jurisdiction as to the claim pursuant to 42 U.S.C. section 2000e-3(a). Jurisdiction as to the remaining claims is based on this court's supplemental jurisdiction.

3.      Venue is based on 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. section 1391(b) and (d).

**The Facts**

1

4.    Plaintiff Natanel Malkoukian is a citizen and domiciliary of the state of New York. Plaintiff is a licensed real estate salesperson who specializes in residential housing primarily in Manhattan, Queens and Brooklyn.

5.    Upon information and belief Defendant Nest Seekers International ("NS") is a corporation organized and existing under the laws of the state of New York, and has its principal place of business in this state.

6.    NS is a global real estate brokerage firm. According to its website, NS has 25 offices and more than 1300 agents. Upon information and belief NS has more than fifteen (15) employees.

7.    Defendant Eddie Shapiro ("Shapiro") is the founder, president and CEO of NS.

8.    Defendant Michael Bethoney ("Michael" or "Bethoney") was at all relevant times a senior vice president of NS. Defendants Shen and Bulfamante were at all relevant times employees of NS.

9.    Beginning in June 2018, and at all relevant times, plaintiff worked full time for NS. His duties included, among other things: soliciting developers to list their proposed and existing condominium apartments with NS; soliciting purchasers to buy those apartments; and helping to create marketing plans and other initiatives to promote NS projects. When an apartment listed with NS is sold, the developer pays NS a commission. NS then pays a portion of that commission to employees, agents and others who worked on the project in question, including plaintiff.

10.    The "economic reality" of plaintiff's relationship with NS, is that he was an NS employee, and NS was his employer, based on at least the following factors:

    a.    He worked full time and exclusively on NS projects since June 2018.

2

b. His work and assignments were supervised and controlled by, and he reported to employees of NS, and in particular to Shapiro and Michael (who served as his direct supervisor).

c. He worked closely with NS employees and agents in soliciting developers to list their (condominium) apartments with NS, and to locate buyers for the apartments.

d. He shared in the commissions paid by the developers to NS, with other employees and agents of NS.

e. NS retained the right to terminate its relationship with plaintiff at will.

f. NS takes the position that it has the unilateral right to determine the percentage of commissions allocated to each of the various agents and employees who worked on any given project and to unilaterally resolve commission disputes between plaintiff and any other agent or employee claiming a commission on the same project.

g. Plaintiff's work was an integral part of NS's business.

11.    Although he is only 24 years old, plaintiff has thus far had a very successful career. He has been written up in various trade publications, and in the year from 2021 to 2022, he earned and was paid commissions of more than $850,000. If not for the unlawful conduct by defendants described below, the NS projects he was already working on at the time of such conduct, would have earned him additional commissions of more than $1.5 million.

12.    Michael has a history of harassing women agents and employees at NS (and upon information and belief), because they are women. He has threatened bullied, belittled and screamed at them, to the extent that they have feared for their physical safety; they are uncomfortable in his presence, and they do not want to be in the same room as, or at meetings with, him. The women he has harassed in this manner include, but are not necessarily limited to, Francesca Bagglio, Xiao Ru Lin, Bianca D'Allessio, and Fenanda Ferriera. Another female employee, Andrea Sedgewick, was harassed by other executives at NS. She sued, and upon information and belief, she received a settlement of approximately $250,000. In addition, Michael engaged in a sexual relationship with

3

Nayi Shen, another employee of NS, in return for which he gave her favorable assignments and projects, which otherwise would have gone to plaintiff.

13.    Plaintiff is an orthodox Jew of Persian descent, and a Sabbath observer who also does not work on Jewish holidays for religious reasons. As a result of plaintiff's refusal to work on Saturdays and Jewish holidays, Michael has belittled and disparaged plaintiff to other employees and agents at NS, and directly to plaintiff himself, referring to plaintiff as lazy and as someone who "barely works". Michael has also threatened and bullied plaintiff, yelling and screaming, spitting, and clenching his fist, to the extent that plaintiff felt threatened physically. Michael has also made disparaging remarks concerning plaintiff's Persian background, saying (in connection with plaintiff) that "Persian Jews are the most despicable people on earth".

14.    Bethoney engaged in similar conduct towards Yitzchak Khaimov, another orthodox Jew, who was also an employee of NS. Khaimov was removed from projects at NS after he complained about Bethoney's behavior.

15.    Plaintiff complained to Shapiro numerous times about Michael's conduct, including Michael's harassment of women and his disparagement of plaintiff's refusal for religious reasons to work on Saturdays and religious holidays. Although Shapiro told plaintiff that he intended to fire Michael, he never did so. On the contrary, in April 2022, Shapiro informed plaintiff that because Michael was very close to many of the developers that NS depended on for commissions, NS would not terminate Michael.

16.    In April, 2022, Michael (and upon information and belief with Shapiro's approval), in retaliation for plaintiff's complaints about him, and as a direct result of plaintiff's observance of religious holidays, removed plaintiff from all group messages for all projects with which plaintiff was associated, and he informed plaintiff that he would not receive any commissions earned by NS on contracts entered into after March 1, 2022. Michael also told developers not to communicate with plaintiff. Shapiro was fully aware of these actions, approved them, and has not taken any steps to reverse these actions. As a result, plaintiff will be deprived of commissions on projects that he has already worked on (including but not limited to projects located at 567 Ocean Ave., 335 West 35th Street, 460 West 42 St., and Skyline Tower, 3 Ct. Square), as well as future NS projects. The actions set forth in this paragraph were done with the knowledge and approval of Shen and Mariano Bulfamante, another employee of NS, who conspired with the other defendants to take these actions..

4

**As and for a First Claim for Relief Against NS (Violation of 42 U.S.C. Section 2000e-3(a))**

17.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 16 as if fully set forth herein.

18.    Plaintiff's complaints concerning Michael, and well as his refusal to work on Jewish holidays were protected activity within the meaning of 42 U.S.C. Section 2000e. Defendants were aware of plaintiff's protected activity. As a direct result of plaintiff's protected activity, defendants retaliated against him by taking the materially adverse employment actions set forth above.

19.    Plaintiff has filed a complaint with the Equal Employment Opportunities Commission concerning the facts set forth above. In July 2023, the EEOC granted plaintiff permission to sue.

20.    By reason of the foregoing plaintiff has been damaged in an amount to be ascertained by the Court, but at least in the sum of $1.5 million.

**As and for a Second Claim for Relief (Violation of N.Y. Executive Law section 296(1)(e)**

21.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 18 with the same force and effect as if fully set forth herein.

22.    The conduct described above constitutes a violation of N.Y. Executive Law section 296 (1)(e).

21.    By reason of the foregoing, plaintiff has been damaged in an amount to be ascertained by the court, but at least in the sum of $1.5 million.

**As and for a Third Claim for Relief (Violation of N.Y. City
Human Rights Law NYC Adm. Code Section 8-107(7)**

22.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 18 with the same force and effect as if fully set forth herein.

5

23.    The retaliatory and discriminatory acts by defendants, complained of by plaintiff, are reasonably likely to deter a person from engaging in protected activity as defined in Title 8 of the NYC Administrative Code.

24.    By reason of the foregoing, plaintiff has been damaged in an amount to be ascertained by the Court, but at least in the sum of $1.5 million.

### As and for a Fourth Claim for Relief (Breach of Contract)

25.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 18 with the same force and effect as if full set forth herein.

26.    On about December 8, 2018, plaintiff and defendant NS entered into a written agreement which provided for plaintiff to receive commission for work he did which resulted in commissions paid to NS.

27.    Paragraph 12 of the written agreement prohibited discrimination based on, among other things, gender, and religion. Paragraph 4 of the written agreement provided that plaintiff could work any hours he chooses.

28.    The conduct described above, and particularly in paragraphs 12 through 18 constitutes a breach of the written agreement.

29.    Plaintiff has performed all of the terms and conditions of the agreement on his part.

30.    By reason of the foregoing, plaintiff has been damaged in an amount to be ascertained by the court, but at least in the sum of $1.5 million.

### As and for a Fifth Claim for Relief (*Quantum Meruit*)

31.    Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 18 with the same force and effect as if full set forth herein.

32.    Plaintiff performed services for defendant NS with the expectation that he would be compensated for such services.

33.    Defendant accepted such services knowing that plaintiffs expected compensation.

34.    Plaintiff is entitled to the reasonable value of those services.

35.    By reason of NS's refusal to pay commission to plaintiff for projects he has worked on, plaintiff has been damaged in an amount to be ascertained by the court, but at least in the sum of $1.5 million.

### As and for a Sixth Cause of Action (Unjust Enrichment)

36.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 18 with the same force and effect as if fully set forth herein.

37.    By reason of the conduct of defendants described above, they are being unjustly enriched at plaintiff's expense, in that they will share in the commissions to which plaintiff would otherwise have been entitled.

38.    It is against equity and good conscience to permit defendants to retain commissions earned by reason of plaintiff's work.

39.    By reason of the foregoing, plaintiff has been damaged in an amount not as yet ascertained, but at least in the sum of $1.5 million.

**WHEREFORE**, plaintiff demands judgment in an amount determined by the court but at least in the sum of $1.5 million, plus attorneys' fees, plus the costs and disbursements of this action, plus interest.

Dated:  New York, New York
         February 12, 2024

**HELLER HOROWITZ & FEIT, P.C.**

Martin Stein

260 Madison Avenue, 17th Floor
New York, New York 10016
Tel: 917-523-0692
Email: mstein@hhandf.com
*Attorneys for Plaintiff*